UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
————————————————————————

**UNITED STATES OF AMERICA,**

     v.                               5:06-CR-410 (NAM)

**JOSEPH BABB,**

                  Defendant.
————————————————————————

| | |
|---|---|
| **APPEARANCES:** | **OF COUNSEL:** |
| GLENN T. SUDDABY | CARL G. EURENIUS, ESQ. |
| UNITED STATES ATTORNEY | Assistant United States Attorney |
| FOR THE NORTHERN DISTRICT OF NEW YORK | |
| 100 South Clinton Street | |
| Syracuse, New York 13261-7198 | |
| | |
| OFFICE OF THE FEDERAL PUBLIC DEFENDER | LISA A. PEEBLES, ESQ. |
| FOR THE DISTRICTS OF NORTHERN NEW YORK | Assistant Public Defender |
| AND VERMONT | |
| The Clinton Exchange, 3rd Floor | |
| 4 Clinton Square | |
| Syracuse, New York 13202 | |
| *Attorney for Defendant Joseph Babb* | |

**Norman A. Mordue, Chief U.S. District Judge**

### MEMORANDUM - DECISION AND ORDER

**I.       INTRODUCTION**

       Defendant, Joseph Babb, moves the Court for an order pursuant to Rule 12(b)(3) of the

Federal Rules of Criminal Procedure suppressing any post-arrest statements or, in the alternative

granting a hearing on the issue, and preserving defendant's rights to make additional motions and

such other and further relief as the Court may deem just and proper. *See* Dkt. No.16, Notice of Mot.

The government has filed its opposition to defendant's motion. *See* Dkt. No. 17.

## II.      BACKGROUND

### A.      The Indictment

On October 18, 2006, a federal grand jury returned an indictment against defendant, which charges that on or about October 9, 2006, in St. Lawrence County, New York, defendant conspired with former co-defendant, Jamie L. Northrup,[1] and others known and unknown to the grand jury to possess with intent to distribute more than fifty grams of a mixture and substance containing cocaine base ("crack") and one-hundred grams of cocaine powder in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A) and 21 U.S.C. § 846.  *See* Dkt. No. 4, Indictment.

### B.      Defendant's Arrest

On October 9, 2006, members of the Massena, New York, Police Department and the United States Department of Justice, Drug Enforcement Agency ("law enforcement officials") executed a search warrant of defendant's residence at 233 Center Street, Massena, New York.[2]  *See* Dkt. No. 17, Mem. of Law at 2.  Law enforcement officials seized $14,275.00 in United States currency and various drug paraphernalia including, plastic bags, rubber gloves and a digital scale.  *See* Dkt. No. 16, Peebles Aff. at ¶ 3, Mem. of Law at 2.  After searching defendant's residence, law enforcement officials observed a 1998 Chevrolet Blazer, belonging to Northrup, parked in the driveway and discovered a set of corresponding car keys on the kitchen table.  One of the law enforcement officials activated the remote "unlock" button and the law enforcement officials proceeded to search the

---

[1]Pursuant to Rule 48(a) of the Federal Rules of Criminal Procedure and with the Court's leave, the United States Attorney, dismissed without prejudice Count One of the Indictment against Jamie L. Northrup due to "[i]nsufficient evidence at this time."  Dkt. No. 15, Order.

[2]The search warrant provided for the "search of the residence of Joseph D. Babb located at 233 Center St., front apartment in the village of Massena for the following property: cocaine in its powdered or cooked form . . . [and] [m]aterials and paraphenallia [sic] used to manufacture, weigh, package and distribute cocaine."  Dkt. No. 16. The search warrant provided for the seizure of any such property upon discovery.  *See id.*

2

Blazer's interior, where they discovered a zipped nylon sack lying on the floor behind the front passenger's seat.  A law enforcement official unzipped the sack, which revealed several baggies believed to hold crack.  *See* Dkt. No. 17, Mem. of Law at 2; Dkt. No. 16, Mem. of Law at 2-3.  The law enforcement officials then consulted with the St. Lawrence County District Attorney's Office and thereafter applied to amend the original search warrant so as to include the Blazer as an addendum to the original search warrant.  Acting Village Justice James M. Crandall approved the addendum.[3] Dkt. No. 16, Mem. of Law at 3.  The law enforcement officials then resumed the search of the Blazer and uncovered 291.7 grams of crack and 100.4 grams of cocaine powder.  *Id.* Peebles Aff. at ¶ 4, Mem. of Law at 3.

The law enforcement officials placed defendant under arrest and transported him to the Massena Police Department for processing and there advised him of his *Miranda* rights, which Defendant orally waived.  When confronted by law enforcement officials with the evidence of the crack, defendant made a series of self-incriminating statements.  *See* Dkt. No. 16, Peebles Aff. at ¶ 4, Mem. of Law at 3; Dkt. No. 17, Mem. of Law at 3.  Defendant disclaimed ownership of the crack/cocaine seized from the Blazer but also noted that he anticipated receiving compensation from Northrup if she sold crack/cocaine to any of his customers.  Dkt. No. 16, Mem. of Law at 3; Dkt. No. 17, Mem. of Law at 3.  These statements are the subject of defendant's motion to suppress, which the Court now turns to address.

**III.    DISCUSSION**

Defendant contends that law enforcement's search of the Blazer was in violation of the Fourth

---

[3]The parties apparently dispute whether law enforcement officials conveyed their suspected discovery of crack in the Blazer to Justice Crandall.  The government asserts that law enforcement officials did not inform Justice Crandall of their illicit discovery prior to his granting the amendment.  Dkt. No. 17, Mem. of Law at 3.

Amendment and that as fruit of the poisonous tree, the Court should suppress defendant's post-arrest statements.  Dkt. No. 16, Peebles Aff. at ¶¶ 4-6.  The government counters that defendant lacks standing to challenge the search and that any violation that may have occurred was not "pervasive or shocking" so as to make "fundamental fairness" an issue.  In the alternative, the government argues that the Court should permit the statements under the inevitable discovery doctrine.  Dkt. No. 17, Mem. of Law at 1-2.

The government asserts that defendant lacks standing to challenge the search of Northrup's Blazer.  *See id.* at 3-4.  "A defendant has no right to have evidence suppressed on Fourth Amendment grounds unless the breached privacy expectation was his own rather than that of a third party."  *United States v. Villegas*, 899 F.2d 1324, 1333 (2d Cir. 1990) (citing *Rakas v. Illinois*, 439 U.S. 128, 133-34 (1978)).  A "defendant may demonstrate the infringement of his own legitimate expectation of privacy by showing that he owned the premises or that he occupied them and had dominion and control over them by leave of the owner."  *Villegas*, 899 F.2d at 1333 (citing *Jones v. United States*, 362 U.S. 257, 267 (1960), *overruled on other grounds*).  Defendant has made no such demonstration and as he concedes, *see* Dkt. No. 16, Mem. of Law at 12, he lacks standing to challenge the law enforcement officials' search of Northrup's Blazer.

To overcome the hurdle posed by his lack of standing, defendant relies on the equitable principle that the government should not unfairly "profit from its lawless behavior."  *United States v. Calandra*, 414 U.S. 338, 357 (1974) (Brennan, J., dissenting).  In support of his position, defendant further cites to the dissenting opinions written by Justices Brandeis and Holmes in *Olmstead v. United States*, 277 U.S. 438 (1928).  Justice Brandeis opined that "[i]f the government becomes a lawbreaker, it breeds contempt for law; it invites every man to become a law unto himself . . . ."  *Id.*

at 485.  Justice Homes echoed similar concerns when he added that "[i]f the existing code does not permit district attorneys to have a hand in such dirty business it does not permit the judge to allow such iniquities to succeed."  *Olmstead*, 277 U.S. at 470.  Invoking fundamental fairness, defendant argues that the Court should not permit the government to circumvent the Fourth Amendment's exclusionary rule and profit from its lawlessness.  *See* Dkt. No. 16, Mem. of Law at 14.  Since the writing of these dissenting opinions, however, the Supreme Court has yet to have expanded the exclusionary rule's ambit and operation so as to permit a court to use its supervisory powers to circumvent settled Fourth Amendment law.

In *Alderman v. United States*, 394 U.S. 165, 174 (1969), the Supreme Court explained that "Fourth Amendment rights are personal . . . [and] may not be vicariously asserted."  The *Alderman* Court continued by explaining that "there is a substantial difference for constitutional purposes between preventing the incrimination of a defendant through the very evidence illegally seized from him and suppressing evidence on the motion of a party who cannot claim this predicate for exclusion."  *Id.*  The Court observed that it has never held that the Fourth Amendment commands anything which might deter an illegal search.  *See id.*  Touching upon this same jurisprudence some fifteen years later, the Court explained that "[i]n determining whether persons aggrieved solely by the introduction of damaging evidence unlawfully obtained from their co-conspirators or co-defendants could seek suppression, . . . we found that the additional benefits of such an extension of the exclusionary rule would not outweigh its costs."  *United States v. Leon*, 468 U.S. 897, 910 (1984) (citing *Alderman* 394 U.S. at 174-75).  "Standing to invoke the [exclusionary] rule has . . . been limited to cases in which the prosecution seeks to use the fruits of an illegal search or seizure against the victim of police misconduct."  *Id.* (citations omitted).  The Supreme Court's consistent

approach to this question is further illustrated by its holdings in *United States v. Payner*, 447 U.S. 727 1980) and *Rakas*, *supra*.

In *Payner*, the Internal Revenue Service devised an investigative scheme to gain access to a suspect's bank records through an illegal search of a bank vice president's briefcase. At trial, the government introduced incriminating evidence obtained as a byproduct of this "flagrantly illegal search" of the briefcase. 447 U.S. at 729. The district court found that "the Government affirmatively counsels its agents that the Fourth Amendment standing limitation permits them to purposefully conduct an unconstitutional search and seizure of one individual in order to obtain evidence against third parties . . . ." *Id.* at 730-31. Based upon this finding, the district court excluded the tainted evidence based upon its supervisory power, which was affirmed by the Court of Appeals for the Sixth Circuit. *Id.* at 731. The Supreme Court reversed the lower court's decision and reiterated its holding from *Rakas* that "a court may not exclude evidence under the Fourth Amendment unless it finds that an unlawful search or seizure violated the defendant's own constitutional rights" and that a defendant's "Fourth Amendment rights are violated only when the challenged conduct invaded *his* legitimate expectation of privacy rather than that of a third party." *Id.* (citing *Rakas*, 439 U.S. 133-43. The *Payner* Court further explained that

> the Fourth Amendment exclusionary rule . . . is applied in part to protect the integrity of the court, rather than to vindicate the constitutional rights of the defendant . . .[and that] where the illegal conduct did not violate the respondent's rights, the interest in preserving judicial integrity and in deterring such conduct is outweighed by the societal interest in presenting probative evidence to the trier of fact.

*Id.* at 736 n.8.

While the Court does not condone the law enforcement officials' unauthorized warrantless search of Northrup's Blazer, it must not confuse the legality of that search with the question of who

6

has standing to challenge the legality of that search.  Because defendant clearly lacks standing to

challenge the search of Northrup's Blazer his motion pursuant to Rule 12(b)(3) of the Federal Rules

of Criminal Procedure to suppress his post-arrest statements must be DENIED.

**IV.     CONCLUSION**

WHEREFORE, after careful consideration of the parties' submissions and the applicable law,

it is hereby

ORDERED, that defendant's motion (Dkt. No. 16) pursuant to Rule 12(b)(3) of the Federal

Rules of Criminal Procedure to suppress his post-arrest statements is DENIED.

IT IS SO ORDERED.

Dated:  March 19, 2007
Syracuse, New York

Norman A. Mordue
Chief United States District Court Judge